all right we will turn to our final case this is Martin versus Bischoff case 23 Good morning your honors Randall Adams for appellant Eric Bischoff This case concerns three transfers of oars headstock that took place in 2011 2013 and 2016 There is no dispute that the latter two transfers took place within the statute of limitations And there's further no dispute that those latter two transfers constituted 99.7% of the shares in dispute The primary issue in this appeal is the legal significance of the first transfer in 2011 through which 2.4 shares Representing one half of one one thousandth of the company was transferred from a Pele to a trust for the benefit of his son The district court wrongly adopted a Pele's use of the statute of limitations as both a sword and shield The district court ruled that it would not consider the validity of the 2011 transfer because it had taken place more than six years Before a tolling agreement was entered in an arbitration which effectively told the statute of limitations in 2019 this was error a central tenant of New York law and Anglo-american jurisprudence in general is that the statute of limitations bars remedies only it doesn't create rights It doesn't create contractual obligations that otherwise don't exist and it doesn't excuse contractual obligations the passage of time cannot create legal fictions in other words the mere passage of time cannot turn an Invalid transfer into a valid transfer and that's exactly what the court ruled here This has always been the law in New York in decisions going back Over a hundred years and in fact back to Old England before that. Why is this invalid? Let's assume we agree with you and your analysis of New York statute of limitations law Why is this what why was the 2011 transfer invalid? Thank you your honor. So there are only certain permitted categories of permissible transfer ease under the 1991 shareholders agreement, which is the contracted issue here the first is Anyone who is an immediate family member of Alvina Martin and and up and who is also an active employee of the company So it's with respect to that category The the RPM and his trust RPM is the grandson of Alvina Martin And as we set forth below before the district court every single dictionary definition of the term immediate family Which is not otherwise defined in the shareholders agreement determine those alternative reasons in other words The district court really never ruled on those they were clearly presented to the district court both the immediate family one and that he's a beneficiary of the Alvina trust This record never really ruled on that And is that something that we should undertake ourselves in the first instance? What arguments actually are brought to us here for why the and were decided below for why This was in fact a proper transfer Why these were group B share shares that were that were able to be transferred from one of the other so your honor I I don't think that this court needs to reach the vote the immediate family provision the Alvina Martin beneficiary trust provision I think this court needs to Reverse the district courts determination that the statute of limitations prevented it from doing that analysis at all I think that's the the first order Question that this court can just part of the argument your opposing counsel makes though that the argument They actually do make to us is that they got to be something in other words There's only two categories of shares in this whole thing the agreement is between shareholders group a and group B and a share has to be something and if By dint of the fact of the statute of limitations or for whatever reason He has shares in the 20 from 2011. Whatever percentage they were They have to be something and they're not a because he's not from that line of the family And so they have to be B and that means they can transfer. Why is that wrong? I'll tell you why it's wrong your honor. So the shareholders agreement is a private contract among the shareholders But this is a Delaware corporation and the shares are governed by the Delaware general corporate law the statutory scheme the Charter That governs the corporation and the bylaws the company issues one kind of share it just issues common stock this delineation between A and B is Only a contractual status delineation. It is it does not follow the shares. So it is entirely possible under Delaware corporate law that's true, but They only issue common stock, but the common stock is issued through shareholder a and shareholder B lineage. I mean No, so your honor the the stock itself is just common stock and then the the delineation between A and B It's just a contractual status that certain shareholders can have right but a judge Lugo's question And I have a two is if they follow the status follows the shares. That's how this whole thing is set up, right? in other words The only one who had shares at day one in 1991 if we went back to that point were either a or B shareholders Right, right and the whole point of the agreement is that the status follows so that this thing stays in the family and there's peace between group A and group B That's why this thing was set up this way. And so if if For whatever reason shares went from this person to that person. Why do they not just take that same status? So that is certainly you are absolutely correct that that is how it was intended to be set up It was intended to keep the shares within the family to keep the shares among holders of group A and group B However, the shareholders agreement expressly provides who may or may not receive shares And if you do not receive shares and connect in in compliance with the shareholders agreement I know but the problem is the horse has left the barn on that one in other words because of the statute of limitations And I tend to agree with your reading of of the sword and shield point that you made when you started But for whatever reason they have He has shares and you can't challenge that at this moment. I can't do anything if Assuming assuming the statute of limitations applies to the 2011 transfer I can't do anything about him holding the 2.4 shares But that doesn't make him a a proper group B shareholder under the shareholders agreement No, what are those shares then? I mean that really is what the open question is They're saying it has to be something or other You certainly took from a group B shareholder the whole this whole thing is set up so that it follows the same group From where you took it, right? It's the premise that it has to be something or the other is not correct It the 2.4 shares can sit outside the shareholders agreement Certainly, it leads to a messier corporate governance We'll have to sort out in the district court below or in the courts of Delaware how voting is going to work and things like That doesn't mean that the the transfer is per se proper because it happened more than six years ago proper I I Think you were miscarried. In other words, I can agree that it's not proper But it also would seem to not fall within this this nether region I'm not a Marvel fan. But what's that? What's that world like that another world a multiverse the multi right somewhere out there Where it doesn't it's not in the world that we are in and that's sort of what you're describing Yes, but what I'm describing is correct as a matter of Delaware law So in the Henry case that we cite in our reply brief It is absolutely the case that someone can have shares Even even when a shareholder's agreement is intended to capture all of the shares in a in a in a company It is absolutely the case that there may be circumstances under which someone comes into possession of shares But they're not a party up to the shareholders agreement. Just remember the shareholders agreement is just private law. It's not the it's Judge luck and I cannot go by shares. Okay, the shares are There's just general stock. That's the common stock that's being issued and the common stock is only for People who fall under shareholder a or shareholder B. There's no other delineation That is correct But that it only comes from this private contract that is that the shareholders have agreed to the agreement does include An understanding that there are going to be situations where a stranger to the contract takes shares And it says you take consistent with this agreement In other words, it does contemplate that there are people in the multiverse It's the quantum realm. Right, the quantum realm. Thank you. It's the quantum realm. She's right. Sorry, sorry, sorry. She's right. I didn't see the final movies. Sorry. But that are in this this place That do take subject to the agreement I mean, there's that clause at the end of paragraph three and paragraph four It says where you take you take subject, right? It is it is true And if you follow the steps in the shareholders agreement for that to happen You do take on the status of that shareholder But as a matter of just first principles of Delaware corporate law, it is absolutely the case that shares It just can't sit outside this outside of this agreement Is this whole discussion properly even before us? I mean, I thought number one by arguing equitable estoppel You were still trying to keep the door open to challenge the original distribution of shares Is that still your position on appeal? It is your honor, but the equitable estoppel is an alternative to this So even if this court concludes that the district court was was correct that equitable estoppel is not available to us This argument which we sort of call a shorthand the rights versus remedies argument is no, I understand that I totally understand that but again I'm just wondering because the argument in terms of equitable Estoppel seems like it would still allow you to go back to those original shares And I think that perhaps there is a question about the fact that even though you didn't raise it Clearly as an affirmative defense. It's still relevant For purposes of this claim preclusion when it comes to state law argument. Oh, absolutely. Your honor Yes So if equitable estoppel is still on the table, then we would still be able to challenge the 2011 transfer and we wouldn't have the The quantum realm issue. Thank you. Thank you Counsel  Good morning, hold on one second. There's the time is I think she's 15. Yeah Thank you Thank you May it please the court. My name is Lauren Purdy with the Gunster law firm With me at counsel table is my law partner Bill Trufino and together We represent the aptly Robert S Martin individually and as trustee of what I call the RS and trusts and the RPM trust New York law in the terms of the 1991 shareholder agreement barred the appellant from bringing an untimely challenge to the validity of Robert S Martin's 2011 transfer 14 years ago a Boar's Head stock to his son Robert P Martin the the face of the Boar's Head brand and the great grandson of one of the founders of the company so let's let's get let's assume for the moment I agree with you on the statute of limitations issue and your client has For your client's son has the 2011 shares through some trust Don't you still have to comply with paragraphs 3 & 4? if you want to transfer those shares in 20 for purposes of trying to get to the 2013 and 2016 transfers We would Robert P Martin Would receive the shares he could receive the shares Pursuant to the 2011 transfer under any of the provisions of 3b Which we would say now includes being conclusively established as a group B So the the problem is though if whether they could challenge the transfer or not is separate from whether In fact, he took it as a groupie shareholder. Those are two separate questions. I believe And I'm for the purposes of these questions. I know you don't necessarily agree with me on that. I go with me on it I know you made the argument below that he is a beneficiary of the Alvina The Alvina trust and he made the argument below that is immediate family member This record didn't rule on those grounds and I can tell you that personally I'm reluctant to rule on them in the first instance So if for some reason you don't win here, it's not as if you lose It just means that you have other great arguments that you'll be able to bring to the district court the one that I want to focus on is really the the first part of paragraph 3 which is that he is a holder of Groupie and it seems to me that you have to show as a matter of first instance that the 2011 shares are groupie shares to then use those as a way to be able to authorize the 2013 and 2016 transfers as groupie. I Disagree. Okay. Tell me why? New so there's multiple different components of New York law that tie into the fact that not only can The appellant not challenge for the purposes of unwinding the 2011 transfer, which is how they narrowly Construe the remedy that has been waived. They can't obtain the remedy of invalidating his status I agree with well, no, what they can't do is undo They can't undo the transfer. He has the shares But that's different from status. We don't know what his status is and that that I feel like has to be litigated So you're right They can't use the failure of statute of limitations to take the shares away from him. If you're right on statute of limitations I think you are that He has the shares but that doesn't automatically make him a groupie and I think to use to look at as we analyze the 2013 and 2016 ones which are within the statute of limitations We have to find which category under paragraph 3 he fits and and then so we have to ask each one Is he a groupie shareholder and it's not clear to me that he took the shares as a groupie shareholder How did he take it as a groupie shareholder? Again, I think there's two points that demonstrate that he took it as a groupie shareholder first Putting outside the issue that the court seems reluctant to rule in which is whether or not If you look behind does it comply with 3b other than groupie? Okay, right put that to the side in 2011 Robert the RPM trust not only paid for shares group B shares From a groupie shareholder signed an assignment agreement Promising to be bound to the rights duties and obligations of a groupie shareholder acted as a groupie shareholder for 14 years including signing a rescission agreement in 2013 that allowed the appellant to keep his shares that he wrongfully transferred to his Teenage then teenage daughters who were not working for the company. So all of those pieces Once the statute of limitations passed the ability to dispute his status as a groupie shareholder expired and the only way to make New York's strong public policy relating to statutes of limitations mean anything is To allow his status as a groupie shareholder pursuant to the 2011 transfer that they never challenged So that sounds like an equitable argument. In other words, what you're saying is He whether he had it whether he was or was not that he has acted as if for the last Decade or so until this thing was challenged and at that point It really would be an equitable sort of unwind this especially since the statute of limitations have gone. Is that what you're arguing? No, okay Something else to keep in mind about New York law Which is again underlying the strong public policy of statute of limitations and strict enforcement of statute of limitations Is the Smith case and the Landau case that we cited in our briefs Where the New York courts have recognized that for claim preclusion purposes adjudication on the merits purposes a statute of limitations dismissal has a Substantive impact I'm looking at the Supreme Court's decision in Semtec and I thought that's the opposite that Dismissal on statute of limitations ground is not a determination of the substantive merits Are we saying different things or did or I did I misunderstand what you said? I'm I am citing to to New York state law cases that have in 2008 and in 1981 Recognized that for the purposes of New York law claim preclusion adjudication on the merits occurs when there's a statute of limitations dismissal and a quote that I think is particularly relevant to this remedy and rights Conundrum is where the Smith court said the impact of statute of limitations though often denominated as procedural in a practical sense May also be substantive. Yeah, but you're talking about a case where It's a subsequent litigation that's using a prior dismissal for statute of immigration grounds as Claim preclusion. That's not what we have here We have the statute of limitations in claim one and then you're trying to use that in claims two and three I think that's a little bit different And I think closer to probably the law that that judge Abudu was relying on In other words if all we were doing is litigating the 2011 and they and you asserted statute of limitations you won And then years later they come and try to do something you can say wait a minute We got a judgment on this and this means X based on this judgment and we can use that as a preclusive effect, right? That's not what we have here, is it? Well, that's not what we have here But I think a different way to think about that that same line of cases must apply is if in 2019 the only challenge they would have brought was an untimely challenge to the 2011 transfer and then a couple years later They challenged the 2016 transfer on the basis that he was never a groupie shareholder when he got the first set of shares in 2011 Effectively within one lawsuit, they are using an untimely challenge to revive their failure to bring that initial challenge Because it's relevant to one lawsuit. I just and I know you make that argument in your brief, too I just don't see it as a revival in other words I don't think this is a collateral or backdoor challenge to the validity because you can't take the shares away from Your client's son or the trust that holds it. That's not what anyone's doing No one's avoiding that. The question is simply for purposes of deciding two other transfers that are at issue Are the shares that your clients hold groupie shares or not? I mean and that seems to be a separate and independent determination from the validity or whether you hold them properly or not Two points Judge Luck. First, that's not all they're asking for. Their complaint at docket entry 9 pages 38 to 39 One wants to unwind all the transfers, wants to discourage all of the dividends going all the way back to 2012 Wants to purchase all of the shares of Robert S. Martin. And we're not talking about that. But for the limited thing that we have, the limited remedy we are talking about right now What we're just discussing simply is if we're determining the validity of the 2013 and 2016 Transactions and if the only basis was that it was from one groupie shareholder to another which is allowed under the agreement Then we have to decide whether they came whether The 2013 and 2016 transfers came from a groupie shareholder in 2011, right? Yes And so then we have to ask that question even though it's barred for purposes of count one We still have to ask that questions for counts two and three, don't we? No, we don't. You don't need to ask the question because they failed to obtain the remedy of invalidating that transfer and by failing to obtain the remedy in time to invalidate that transfer under New York law under the terms of the shareholder agreement Robert P. Martin, the Robert P. Martin Trust is a groupie shareholder as What is your best case that supports that position that Robert P. Martin is a shareholder B under New York law? Two points, Judge Lagoa. First, the claim preclusion cases that I was just referring to. That's an adjudication on the merits after the statute of limitations runs The barring of the remedy in this instance means the remedy to invalidate The transfer to a groupie shareholder. And then two, which isn't a case, but I think is relevant. The terms of 1991 shareholder agreement. You get a group A from a group A, you get a group B from a group B. The suggestion that will there'll be messy corporate governance will have to work it out under Delaware law is exactly why the statute of limitations exists. You have to have finality. Robert P. Martin Trust had to know after the six-year statute of limitations ran That he was a groupie shareholder, that he could continue to act as a groupie shareholder, that there was nothing else left to do to challenge his status as a groupie shareholder within this closely held company that he is the face of. So for the court to disregard that piece and to say we can look behind and consider anew something that cannot be invalidated is to disregard New York strong public policy on statute of limitations and therefore, although the court can reach As an alternative. What are the outer limits of that? I mean, in this case you have You have a claim that was brought that was barred by the statute of limitations that didn't go to the merits. And now you're converting that into a merits determination to forever bar claims that were properly timely brought before the court. If we adopt your position that could result in improper transfers still being rubber stamped simply because the plaintiff didn't exercise their rights. Timely enough, it seems like the consequences of missing the statute of limitations is far beyond just that particular claim. Now the collateral consequences anything related to that you're forever you're barred from that because an erroneous Retransferred stock which still survives because the statute of limitations allows it to gets to now cloak itself and validity. Up two points, Judge Abudu. First, the statute of limitations exists. It's a legislative judgment that we have to have finality. This isn't a circumstance. And in terms of the 2.4 shares you have for not finality those shares are forever with your client. They're not going anywhere. The question is what happens to the other shares and for that purpose. I tend to agree with Judge luck. It is appropriate to determine the status of your client for purposes of those other shares and that was not done. Judge Abudu, by virtue of the application of New York statute of limitations and New York common law that statute of limitations can be an adjudication on the merits. Unlike in the Lando case, you get a dismissal for lack of standing or lack of jurisdiction that doesn't have an adjudication on the merits status statute of limitations under New York, there's you have six years to challenge the only disputed in the rest of the United States. And the only chance that you get is if you don't have a good record. The only chance that you have is if you don't have a good record is if he knew very short in time or multiple years ahead in time. He had the ability to dispute it. He had the ability to invalidate the transfer and dispute that Robert P. Martin trust Robert P. Martin ultimately is a groupie shareholder of the company. You are concerned, Judge Abudu, about the impact going into the future. I have the same concern if the statute of limitations isn't applied correctly, what they're saying, what what counsel said to start his argument was now there'll be messy corporate governance that someone will have to work out because although my client knew within the statute of limitations that he could challenge, he didn't, and now I want to assume you're right for a second about the about New York law and it being an adjudication on the merits. So we have to look at what you actually saw it in the deck action that we're talking about here, right? Did you see the deck action declaring that the 2011 shares are groupie shares? We we saw a declaration of multiple different steps to our deck. And I there's five. I'm looking at them right now. Page 16 of the of the deck action. I'd be interested to see if you think that one of them, it says that it that that you saw the declaration that now is a judgment because of the statute of limitations that these shares were, in fact, groupie shares as opposed to that you own the share that your client owns the shares. Judge, look, I have to concede to you that we didn't get that specific in within the doesn't matter for purposes of what we're talking about. If it's what you say, which is that it's an adjudication and what it matters, what was adjudicated, doesn't it? It does. However, we also have to look at what they sought a declaration for and they sought a declaration to invalidate it. So every judge was entered against them on their complaint. It was entered for you on yours. That's that's the judgment that is has preclusive effect. Right? Yes. Yes. But the fact that the the claim for declaratory relief doesn't get specific to that degree doesn't make an argue any difference to whether or not the court can affirm the judgment of the of the district court. All right. Thank you. Fourteen years ago, the RPM Trust received shares in Boar's Head. All these years later, this court should affirm the judgment of the district court and affirm. Thank you. Thank you so much.  Your Honor, I just have two quick points to make. The first is, I think, looking at the twenty eleven transfer documents that it shows the logical, logical inconsistency that's in the district court's opinion. If we can look at the twenty eleven transfer documents to make a determination about the legal significance of the twenty eleven transfer after the passage of the statute of limitations and the district court can still look at the shareholders agreement and the categories of permitted transferees and make the other side of the determination as to whether or not the transfer was permitted in the first place. Second, with respect to the Smith and Lando cases, those things being litigated together, though, your opposing counsel saying you can't disaggregate the the two things ownership and the status of those shares. Those are inherently the same thing, especially in this agreement where it's all taken together. And so if if we agree, I'm not saying we do, but if we agree that the statute of limitations limits your claim on twenty eleven and they have the shares, it's theirs, it's unchallengeable right now, then it has to be something. And it's all litigated and bundled together. And once it's bundled together and they have it, then they can use that to show that he was a groupie shareholder for purposes of the other transactions. Why? Why does that not hold? Because it is not all bundled together. There's only one class of stock that's common stock. If we can't do anything about the two point four shares, then the RPM trust just holds two point four shares of common stock. It is not necessarily a groupie shareholder with the contractual status. It really are two different things that the mere fact of owning holding shares is a different thing for me. If the transfer documents said he took subject and that he was a groupie shareholder. So the transfer documents do not have any reference to groupie shareholders. It does say that they take subject to the agreement. It does say that, but it doesn't say anything about what contractual status he's taking. And furthermore, the paragraph three of the shareholder's agreement also requires him to execute and deliver an instrument in which he agrees to become a groupie shareholder. So that he didn't even satisfy that part of paragraph three of the shareholder's agreement. But the predicate analysis is whether or not the transfer complied with the transfer restrictions in the shareholder's agreement. And you have to do that analysis before you get to the transfer, what the legal effect of the transfer agreement is in the first place. We just think you can't skip over that first analysis and get to the legal effect of the transfer agreements. Do you disagree with their understanding and recitation of New York law and statute of limitations? Yes, Your Honor. And that it's a merits determination? Yes, Your Honor, we do. So first of all, as the panel's questions pointed out, we don't have a prior proceeding here where there was some kind of claim preclusion or res judicata. But they're not wrong that if that was the situation, in other words, if this had been disaggregated in 2019, you brought the 2011 transfer claim. And then that was litigated on statute of limitations ground. And then three years later, you brought these 2013 and 16, we'd be in that situation, wouldn't we? I don't think so, Your Honor. So Johnson v. Albany, which is the old case, but still cited in New York, in that case, there was a prior proceeding where it had been determined that the buyer of the stock had not made subscription payments, but that the seller of the stock was out of time to challenge that. So there was a prior proceeding there. And then in the subsequent proceeding that's before the court in Johnson v. Albany, the court says that it doesn't matter what happened in that prior proceeding. That didn't make it the case that those payments had been paid. The fact that they were out of time to be challenged prior doesn't create this legal fiction that those payments had been paid. So I don't think that that is, I don't think that that's the way police have described it works, particularly with Johnson. But again, those aren't our facts here. Thank you, counsel. All right, thank you. We're adjourned for the day. Thank you.